Matthias, J.
The Court of Appeals announced that, after careful consideration of the record, it reached the conclusion that the verdict of conviction and judgment should not he disturbed on the weight of the evidence, but held that prejudicial error was committed by the trial court, in that the instruction defining murder in the first degree included the definition of murder in the commission of robbery, and that the instruction as to the right of the jury to recommend mercy was incomplete, in that it did not advise the jury as to the effect of a recommendation of mercy.
The portion of the charge of the trial court first referred to as erroneous is as follows:
“By the law of this state it is provided that whoever purposely and either by deliberate and premeditated malice or by means of poison or in perpetrating or in attempting to perpetrate rape, arson, robbery or burglary kills another is guilty of murder in the first degree.”
Before entering upon a discussion of this ground of error some of the essential facts disclosed by the record should be stated.
A few days prior to September 1st, the date upon *507 which the crime in question was committed, the defendant, John Karayians, and one George Pappas, had entered a small field of sweet corn near the city of Warren, owned by David Gamble, the man who was subsequently killed, and had taken therefrom a few ears of corn, in regard to which transaction Gamble on that day had some conversation with the two Greeks above mentioned. There is evidence that money was then paid Gamble for the com which had been taken. However, it appears that David Gamble, on September 1, seeing John Karayians and George Pappas on the streets of Warren, went to police headquarters, and upon his request the chief of police detailed Joseph Lavender, a police officer then in plain clothes, who went with Gamble to a thicket near a place known as a transfer track, used jointly by the Pennsylvania Railroad Company, the Erie Railroad Company, and the B. & 0. Railroad Company, whence they had been advised John Karayians had theretofore gone. The police officer informed Karayians that he was under arrest, and caused him to walk in front of him toward a spring to which George Pappas had gone for water. They met Pappas and a colored man returning from the spring with a can of water. Officer Lavender informed Pappas that he was wanted at police headquarters, and then, as the officer was about to place handcuffs upon Karayians, the latter drew a revolver from his pocket, and shot the officer, the bullet passing through a portion of his body, and striking his spina] column. The officer fell to the ground paralyzed, but not unconscious. Karayians discharged two more cartridges at the officer, and then fired two shots at Gamble, both of which took effect, and Gamble died shortly thereafter. *508 Karayians returned to the officer, and, after striking him twice over the head with the butt of his revolver, picked up the handcuffs, took the revolver from the pocket of the officer and fled, together with Pappas. He was arrested some time later in Kansas City, Mo.
By reason of some evidence in the record indicating that the action of the police officer was based upon the complaint of Gamble that Karayians and Pappas had stolen corn out of his field, it is claimed that the portion of the charge above quoted was prejudicial to the defendant, because it indicated to the jury that they would be authorized to find Karayians guilty of murder in the first degree, if the killing had been done in the perpetration of robbery, and that, by reason of the evidence as to the stealing of the com, the jury might have received the impression that the killing was done in the perpetration of a robbery. It is urged, therefore, that it was prejudicial to the rights of the accused to use the word robbery in connection with the charge, because laymen do not readily distinguish between the terms larceny, robbery, and burglary.
In no part of the charge other than that above quoted did the trial court use the word robbery, and it is quite apparent that the court was then reading or quoting from the statute (Section 12400, General Code) defining murder in the first degree. It has been so frequently decided as to almost become elementary law that the entire charge of the trial court must be examined before it can be determined that any portion thereof is prejudicial. At the very inception of the charge the court read the indictment to the jury, and thereafter gave specific instructions which would preclude their consideration of a *509 charge of killing while in the perpetration of robbery, rape, or arson. In this respect the charge of the court is particularly clear. After reading the indictment and admonishing the jury as to the presumption of innocence in favor of the defendant, the court instructed the jury that “before any conviction can be had under this indictment there are certain essential facts which the state must establish to your satisfaction beyond the existence of a reasonable doubt,” and the court then set forth the essential elements of the crime as charged in the indictment. The court also said to the jury:
“Under this indictment it is essential to a con: viction of murder in the first degree that it appear beyond the existence of a reasonable doubt that the defendant in the manner and form charged did kill the said David Gamble unlawfully, feloniously, purposely and of deliberate and premeditated malice.”
The court thereupon defined the terms used in that portion of the instruction, and particularly the terms “deliberate and premeditated malice,” saying again, as a preface to such definition:
“Moreover, the act must have been done with deliberate and premeditated malice.”
And a little further along in the charge the court admonished the jury as follows:
“If you have a reasonable doubt as to any one or all of these essential elements of murder in the first degree as charged in this indictment, it will be your duty to acquit the defendant of the crime of murder in the first degree.”
It seems quite clear, therefore, that throughout the instruction the court repeatedly limited the jury to the consideration of the charge of murder in the first degree, as laid in the indictment, and therefore *510 precluded the consideration of any charge of murder while in the perpetration of rape, robbery, or arson. We must therefore disagree with the Court of Appeals, in so far as its reversal of the judgment of the trial court was based upon the conclusion that the jury were, or could have been, misled by the mere use of the word robbery by the trial judge in reading the full statutory definition of murder in the first degree.
Did the trial court commit error prejudicial to the rights of the defendant in not explaining to the jury the effect which a recommendation of mercy would have, if included in their verdict? The pertinent portion of the charge is. as follows:
“If, under the evidence and the law in this case, you should’find the defendant guilty of murder in the first degree as he stands charged in this indictment, you should so state in your verdict. In that event the jury may recommend mercy, and, in that event, that likewise should be set forth in your verdict. If you should find the defendant not guilty of murder in the first degree, you will next inquire if he is guilty of murder in the second degree, and, if you should so find, you will indicate that fact in your verdict.”
Then follow instructions relative to the included offenses.
It is urged that the jury probably did not know that a recommendation of mercy would result in a sentence of life imprisonment under the statute. It may be said, in answer, that the jury may not have known the punishment that would necessarily follow a verdict of guilty of murder in the first degree without such recommendation, or a verdict of guilty of murder in the second degree, or of man *511 slaughter, but it surely will not be contended that it is essential that the method and duration of punishment for the commission of any and all offenses included in the indictment must be stated in detail to the jury any more than it could be claimed that in a larceny charge, where the punishment is made dependent upon the value of the stolen property, the jury must be advised as to the effect of their finding of the value of such property upon the punishment to be inflicted under the law.
It is clear to every mind that a recommendation of mercy presupposes a finding that clemency should be extended, and that some degree of leniency ought to be allowed—that the extreme penalty of the law be not inflicted. Therefore, where a jury have, as this jury did have, the court’s instruction that they are authorized to recommend mercy, and that instruction is unaccompanied by any restriction or limitation whatever upon their discretion to make such recommendation, and the jury refuse to make it, the conclusion is irresistible that the jury found the case to be one in which leniency or clemency should not be extended.
In the case of State v. Schiller, 70 Ohio St., 1, 70 N. E., 505, this court held:
“On the trial of such indictment, the court is not required to instruct the jury that no person so convicted and imprisoned ‘shall be recommended for pardon by the board of pardons, or for parole by the board of managers of the penitentiary, except upon proof of innocence established beyond a reasonable doubt;’ and the omission to so instruct the jury is not error.”
It could be argued in this case, as it was in that, that had the jury known that under the statute it was made difficult for one convicted of murder in *512 the first degree, if mercy was recommended, to procure a pardon, or be otherwise released from confinement in the penitentiary, they would have concluded that mercy should have been extended, and, so recommended in their verdict. In that- case the trial court did, it is true, state to the jury that the legal effect of a recommendation of mercy would be to change the penalty of death to imprisonment for life, and this court held that the trial court was not required to go further in such instructions with reference to the limitation upon the power of the board of pardons, etc. This court did not hold that the trial court was required to instruct the jury as to the legal effect of a recommendation of mercy, or that it would be error prejudicial to the defendant if such instruction was entirely omitted.
A careful review of the record in this case leads inevitably to the conclusion that the evidence justified the verdict rendered by the. jury, and that the recommendation of mercy was withheld, because the jury believed the case to be one which did not warrant the leniency or clemency permitted by the statute, rather than from any lack of knowledge of the jury as to the effect such recommendation of mercy would have.
The judgment of the Court of Appeals is reversed, and the judgment of the court of common pleas affirmed.

Judgment reversed.

Marshall, C. J., Wanamaker, Robinson, Jones, Day and Allen, JJ., concur.